**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **DEBRA BUTLER, individually and on behalf of all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**GLENMARK PHARMACEUTICALS, INC., USA,**<br><br>**Defendant.** | **Civil Action No. 24-8907 (EP) (JSA)** |
| **MARTHA BREWTON, individually and on behalf of all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**GLENMARK PHARMACEUTICALS, INC., USA,**<br><br>**Defendant.** | **Civil Action No. 25-12055 (EP) (JSA)**<br><br>**OPINION & ORDER**<br><br>**FILED UNDER TEMPORARY SEAL** |

**JESSICA S. ALLEN, U.S.M.J.**

Plaintiffs[1] filed class-action fraud and product liability lawsuits against Glenmark Pharmaceuticals, Inc., USA ("GPI") on behalf of themselves and affected consumers across

[1] Debra Butler (on behalf of the estate of Mary Louise Cormier), Joanne Ito (on behalf of the estate of Salome Cabotaje), Francine Rubens, Tammy Neuman (on behalf of the estate of Jeffrey Setters), Penny Klitzke, Tony Nyugen, and Martha Brewton.

several states. They allege that GPI sold generic, extended-release potassium chloride capsules that were dangerous and worthless because they did not meet FDA therapeutic standards, United States Pharmacopeia requirements, or proper manufacturing practices. (*See generally* Second Amended Complaint ("SAC"), ECF No. 66). Plaintiffs claim they suffered financial losses from buying these adulterated drugs, and one plaintiff, Mary Louise Cormier, also claims to have suffered a personal injury.

Before the Court is a privilege dispute. GPI has withheld or redacted a number of internal communications occurring over several days in June 2024, when the company was communicating with the FDA regarding the product recall at the center of this lawsuit. These communications fall into two groups: (1) communications that include lawyers and various non-lawyer corporate personnel ("Group 1") and (2) communications that do not include any lawyers ("Group 2"). GPI contends that the Group 1 and 2 communications at issue are protected by the attorney-client privilege or the work-product doctrine. (*See* ECF Nos. 103, 109). Plaintiffs oppose on several grounds. (*See* ECF No. 105). The Court did not hear oral argument, pursuant to Federal Rule of Civil Procedure 78. After carefully considering the parties' submissions, and for the reasons set forth below and for good cause shown, GPI's request to withhold or redact documents based on privilege or work-product protection is **GRANTED IN PART AND DENIED IN PART**.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[2]

The facts and extensive procedural history of this case are well-known to the parties and

[2] In constructing this background section, the Court has drawn from the Complaint, GPI's Answer, and from the parties' submissions on the privilege dispute, including the Declaration and Supplemental Declaration of GPI's Executive Director of Regulatory Affairs Thomas Callaghan supplied by GPI (*see* ECF No. 103-1 ("Callaghan Decl.") & 109-2 ("Supplemental Callaghan Decl.")) and Callaghan's deposition testimony supplied by Plaintiffs (*see* ECF No. 106, Ex. 1).

detailed in prior Opinions and Orders. (*See, e.g.*, ECF Nos. 65, 116). Although a full factual and procedural background is omitted, some background is necessary to place this dispute in proper context.

GPI is a New Jersey-based pharmaceutical company, which distributes FDA-approved prescription generic medications in the United States. (*See* Callaghan Decl., ¶ 2). GPI is a subsidiary of Glenmark Pharmaceuticals Ltd. ("GPL"), which is headquartered in Mumbai, India. (*Id.*) GPI primarily sells products to distributors and wholesalers, who supply the retailers and pharmacies that ultimately dispense them to prescription-holding consumers. (*Id.*, ¶ 3). In addition, GPI serves as GPL's registered agent with the FDA, which means that GPI is GPL's U.S. point of contact with the FDA and relays FDA communications to GPL personnel, while also coordinating and transmitting responses back to FDA. (*Id.*, ¶ 5; *see also* ECF No. 105 at 2).[3] One of the products that GPI distributed was the product at issue in this case—that is, Potassium Chloride Extended-Release Capsules, USP (750 mg) 10 mEq K ("Potassium Chloride" or the "Product"). (*Id.*, ¶ 4).

In April 2024, GPL allegedly notified GPI that it had "observed out-of-specification ("OOS") test results for certain Potassium Chloride pills," specifically, that some pills that were closer to their expiration date began to dissolve more quickly than the specifications called for. (*Id.*, ¶ 6). GPI, as GPL's agent, notified FDA of the dissolution issues through the filing of a "Field Alert Report" ("FAR"). (*Id.*, ¶ 7). [redacted]

[3] According to his declaration, Mr. Callaghan is the primary liaison regarding GPI's communications with GPL, FDA, and in-house and outside counsel for both GPI and GPL, representing that he serves "as the conduit through which information . . . feedback, and leadership input were transmitted" between and among all involved. (Callaghan Decl., ¶¶ 5, 13).

[redacted]

[redacted]

According to GPI, "FDA's June 13 communication required GPI to respond quickly to an evolving regulatory situation involving draft public statements, related recall documents, and communications with FDA, against the backdrop of potential litigation exposure. In that setting, the company sought legal guidance concerning the implications of FDA's communications and appropriate next steps." (ECF No. 103 at 4). Over the following week, GPI and GPL personnel coordinated various tasks related to the recall, including the preparation of a draft press release directed by FDA. (*Id.*) At the same time, GPL continued to investigate the dissolution issues, which included retaining three experts to evaluate the potential health impacts of the dissolution issues. (*See id.* at 5). Based on these efforts, GPI communicated to FDA that it believed that the recall should be designated as Class II, not Class I. (*Id.*) Ultimately, on June 24, 2024, FDA

[4] A Class I recall is "a situation in which there is a reasonable probability that the use of or exposure to a violative product will cause serious adverse health consequences or death," (ECF No. 105 at 2), and would require public notification to individual consumers (*see* ECF No. 103 at 4; Callaghan Decl., ¶ 4).

rejected GPI and GPL's position and confirmed that the recall would be classified as Class I, [redacted] (ECF No. 105 at 3). GPI posted a press release on its website on June 24, 2024, and FDA posted the recall on its website on June 25, 2024. (*See* ECF No. 103 at 6). GPI's final press release "warns patients that Glenmark's failed dissolution defect can result in irregular heartbeat that can lead to cardiac arrest," and that, for "patients with underlying comorbidities or conditions that cause altered excretory mechanisms for potassium, the defect can cause severe potential life-threatening adverse events of hyperkalemia such as cardiac arrythmias, severe muscle weakness, and death." (ECF No. 105 at 3-4) (internal quotes and cites omitted).

Two months later, on August 30, 2024, Plaintiffs filed the present action. (ECF No. 1). A Pretrial Scheduling Order entered on December 17, 2024, initiated fact discovery. (ECF No. 20). The parties then filed motions to amend the complaint and dismiss the case while also requiring court intervention to resolve several discovery disputes. (*See* ECF Nos. 32, 50, 76, 82, 97-99 & 116). Relevant here, the parties submitted a joint letter on January 26, 2026, advising that Plaintiffs disagreed with GPI's privilege log designations relating to internal communications that occurred during the June 2024 timeframe discussed above. (*See* ECF No. 92).

Following unsuccessful meet-and-confer sessions and court conferences, (*see*, *e.g.*, ECF Nos. 94, 97, 98 & 104), the Court entered an Order on March 25, 2026, directing the parties to (i) submit letter briefs on the privilege dispute, and (ii) confer and select twelve (12) or less representative sample documents from GPI's privilege log for this Court to review *in camera*. (ECF No. 99).[5]

[5] Sampling is frequently used in this district when there are large number of privileged documents in dispute. *See Shipyard Assoc. L.P. v. City of Hoboken*, 2015 WL 4623470, at *2 (D.N.J. Aug. 3, 2015) (citing cases directing sampling in privilege disputes); *see also D'Ambly v. Exoo*, 2024 WL 4880322, at *4 (D.N.J. Nov. 25, 2024) (employing sampling). The concept of sampling is that the Court will review sample documents and provide

The instant motion followed. In general terms, GPI contends that the challenged communications reflect a "continuous legal review process covering just a few days" and involve the transmission of information to counsel, requests for legal advice, counsel's review of draft information, and the internal coordination between non-attorneys necessary to facilitate and implement counsel's legal advice. (*See* ECF Nos. 103 at 1 & 107 at 1). In contrast, Plaintiffs generally challenge GPI's privilege designations on the theory that the communications at issue reflect ordinary business discussions, and in many instances are directed to large groups of recipients, many of whom were tasked with moving forward with the business aspects of a recall and were not integral to the provision of legal advice. (*See* ECF No. 105 at 1, 7).

## II. APPLICABLE LEGAL STANDARDS[6]

### a. ATTORNEY-CLIENT PRIVILEGE – GENERAL PRINCIPLES

The attorney-client privilege exists to promote full and frank discussions between attorneys and their clients. *Upjohn v. United States*, 449 U.S. 383, 389 (1981). In New Jersey, the privilege is codified and protects: "communications" made "in confidence," between a "lawyer and client" during a "professional relationship." N.J.S.A. 2A:84A-20; N.J.R.E. 504; *see In re Envtl. Ins. Declaratory Judgment Actions*, 259 N.J. Super. 308, 313 (App. Div. 1992) (elements of the privilege). A communication made in the course of relationship between lawyer and client "shall

representative rulings that the parties can apply to any similar documents being withheld on the same grounds. *See, e.g., Shipyard*, 2015 WL 4623470, at *2; *In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 181 & n.1 (D.N.J. 2004).

[6] This case is in federal court based on federal diversity jurisdiction. (SAC, ¶ 12). Pursuant to Federal Rule of Evidence 501, when addressing questions of attorney-client privilege in diversity-based jurisdiction cases, the court applies state privilege law. *See In re Ford Motor Co.*, 110 F.3d 954, 965-66 (3d Cir. 1997). However, unlike the attorney-client privilege, the work product doctrine is governed, even in diversity cases, by uniform federal law embodied in Federal Rule of Civil Procedure 26(b)(3). *See United Coal Companies v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988). Here, despite Plaintiffs seeking to bring claims on behalf of several state subclasses, the parties agree that New Jersey law should apply to questions of attorney-client privilege. (*See* ECF No. 103 at 6; ECF No. 105 at 4). Accordingly, the Court applies New Jersey law to questions of attorney-client privilege and federal law to questions relating to the work-product doctrine.

be presumed to have been made in professional confidence unless knowingly made within the hearing of some person whose presence nullified the privilege." N.J.R.E. 504(3) (emphasis added). Despite the presumption of confidentiality, "the essence of the privilege" is limited to communications intended to be confidential. *State v. Schubert*, 235 N.J. Super. 212, 220-21 (App. Div. 1989), *certif. denied*, 121 N.J. 597 (1990). The party asserting the privilege bears the burden to prove that it applies to any given communication. *Horon Holding Corp. v. McKenzie*, 341 N.J. Super. 117, 125 (App. Div. 2001).

Although the attorney-client privilege is narrowly construed because it "obstructs the truth-finding process," the privilege is not disfavored, and where applicable, "must be given as broad a scope as its rationale requires." *United Jersey Bank v. Wolosoff*, 196 N.J. Super. 553, 561-62 (App. Div. 1984). Courts should be cautious in their application of the privilege mindful that "it protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403 (1976). Confidential communications relaying factual information in furtherance of an attorney's representation are privileged. *See id*. At the same time, underlying facts themselves are never privileged. *In re Human Tissue Prod. Liab. Litig.*, 255 F.R.D. 151, 164 (D.N.J. 2008).

**b. CORPORATION ASSERTING THE ATTORNEY-CLIENT PRIVILEGE**

The attorney-client privilege applies to both individuals and corporations. *See Upjohn*, 449 U.S. at 390. Corporations, as entities, must act through their employees and management. *See In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 123-25 (3d Cir. 1986) (citing *Commodity Futures Trading v. Weintraub*, 471 U.S. 343, 348 (1985)). Accordingly, the attorney-client privilege extends to communications between a corporation's management and employees where doing so would effectuate or enable legal advice. *See Upjohn*, 449 U.S. at 391. However,

any privilege is waived if the document or communication is shared beyond individuals with a "need to know." *TransWeb, LLC v. 3M Innovative Properties Co.*, 2012 WL 2878075, at *3 (D.N.J. July 13, 2012). General group wide descriptions do not permit the court to determine if the recipients require, or have the capacity to act upon, the information distributed, and thus, are not privileged. *See id.*

In the context of email communications, such as those at issue here, merely "cc'ing" an email to an attorney is insufficient to establish privilege. *See, e.g., Spiniello v. Hartford Fire & Ins. Co.,* 2008 WL 2775643, at *2 (D.N.J. July 14, 2008) (citing *In re Avantel*, 343 F.3d 311, 321 (5th Cir. 2003)). If a communication (such as an email) is privileged but contains attachments, "each attachment must individually satisfy the criteria for establishing the privilege. Merely attaching something to a privileged document will not, by itself, make the attachment privileged." *Shipyard,* 2015 WL 4623470, at *5 (citing *Leonen v. Johns-Manville*, 135 F.R.D. 94, 98 (D.N.J. 1990)); *see also In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Prods. Liab. Litig.,* 2021 WL 3144945, at *9 (D.N.J. July 26, 2021).

**c. ATTORNEY-CLIENT PRIVILEGE – BUSINESS VS. LEGAL**

A lawyer must be acting in a legal capacity to qualify for attorney-client protection. A lawyer's provision of advice concerning a corporation's business affairs, technical issues, or public relations is not protected by the attorney-client privilege. *See, e.g., Dejewski v. Nat'l Beverage Corp.*, 2021 WL 118929, at *1-2 (D.N.J. Jan. 12, 2021); *Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp*., 253 F.R.D. 300, 305-06 (D.N.J. 2008). Thus, the privilege applies only if the communication was made to an attorney acting as an attorney; in the event the attorney was functioning in a business role, the privilege does not apply. *See, e.g.*, *Payton v. New Jersey Turnpike Auth.*, 148 N.J. 524, 550-51 (1997) ("An attorney who is not performing legal services

or providing legal advice in some form does not qualify as a 'lawyer' for purposes of the privilege."); *Newark Bd. of Ed. v. Newark Teachers Union Local 481, AFT, AFL-CIO*, 152 N.J. Super. 51, 62-63 (App. Div. 1977) (privilege did not protect notes prepared by an attorney serving as a negotiating representative); *Metalsalts Corp. v. Weiss*, 76 N.J. Super. 291, 299 (Ch. Div. 1962) (no privilege when attorney acted as investigator).

At times, communications may contain both legal and business interests, and courts must ascertain whether "the communication is designed to meet problems which can be fairly characterized as predominantly legal." *Leonen*, 135 F.R.D. at 99; *see also In re Johnson & Johnson,* 2021 WL 3144945, at *3. To satisfy this standard, the proponent of the privilege should demonstrate "that the communication would not have been made but for the client's need for legal advice or services." *Id.* (quotations omitted). Unfortunately, while the rule is clearly stated, its application is difficult, since in the corporate community legal advice 'is often intimately intertwined with and difficult to distinguish from business advice.'" *Leonen*, 135 F.R.D. at 98–99 (quoting *Sedco Int'l SA v. Cory*, 683 F.2d 1201, 1205 (8th Cir.1982)). Therefore, ultimately, if a communication is made "primarily for the purpose of obtaining legal advice, an incidental request for business advice does not void the attorney-client privilege." *In re Johnson & Johnson*, 2021 WL 3144945, at *3.

**d. ATTORNEY-CLIENT PRIVILEGE: INTER-CORPORATE COMMUNICATIONS**

Several of the challenged communications involve emails between and among GPI and GPL's employees that do not involve an attorney. "Traditional notions of attorney-client privilege require a communication between an attorney and a client." *Margulis v. Hertz Corporation*, 2017 WL 772336, at *8 (D.N.J. Feb. 28, 217). However, as several courts, including this one, have found, the attorney-client privilege also can apply to a communication that does not include an

attorney if the communication is "by a corporate employee concerning matters within the scope of his/her duties and that were purposefully made to enable an attorney to provide legal advice to the corporation." *Jorjani v. New Jersey Institute of Tech.,* 2021 WL 4237255, at *5 (D.N.J. Sept. 17, 2021) (citing *Engage Healthcare Communs. v. Intellisphere*, 2017 WL 10259770, at *3 (D.N.J. Sept. 12, 2017) (collecting cases)); *see also D'Ambly*, 2024 WL 4880322, at *11; *In re Riddell Concussion Reduction Litig.*, 2016 WL 7108455, at *5 (D.N.J. Dec. 5, 2016) (citing cases).

"The context and purpose for which the emails were forwarded to legal counsel are relevant to the determination of whether each email is privileged. As other courts have found, when an individual email communication within an email chain either discusses, transmits, and/or reflects legal advice, the communication within the document is protected by the privilege." *Jorjani*, 2021 WL 4237255, at *5. As such, the privilege may protect communications exclusively involving non-lawyers if the nonlawyers are "transmitting" legal advice, "must be consulted in order for a lawyer to provide legal advice," "need to know" about the lawyer's advice, or "have information necessary to assist the lawyer in providing legal advice." *Margulis*, 2017 WL 772336, at *8.

**e. WORK-PRODUCT DOCTRINE**

The federal work-product doctrine is set forth in Federal Rule of Civil Procedure 26(b)(3), which provides:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> (i) they are otherwise discoverable under Rule 26(b)(1); and
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3).

The doctrine itself "shelters the mental processes of the attorney, providing a privileged area within which [the attorney] can analyze and prepare [the] client's case." *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 661–62 (3d Cir. 2003) (quoting *United States v. Nobles*, 422 U.S. 225, 238 & n.11 (1975)).

The party asserting work product protection bears the burden to show the doctrine applies. *See Conoco, Ins. v. U.S. Dep't of Justice*, 687 F.2d 724, 730 (3d Cir.1982). Courts in this Circuit have adopted a "two-part test for ascertaining whether the documents (or things) at issue should be protected under the [work-product doctrine]." *In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 183 (D.N.J. 2003).

The first inquiry is the "reasonable anticipation test," which requires that the court determine whether "litigation could reasonably have been anticipated." *In re Gabapentin*, 214 F.R.D. at 183. "[T]he relevant inquiry is 'whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" *Maertin v. Armstrong World Indus.*, 172 F.R.D. 143, 148 (D.N.J.1997) (quoting *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1258 (3d Cir.1993)). Although litigation need not be imminent, *Rockwell,* 897 F.2d at 1266, "there must be an identifiable specific claim of impending litigation." *Maertin*, 172 F.R.D. at 148 (quoting *Leonen,* 135 F.R.D. at 97).

The second inquiry is whether the documents were prepared "primarily for the purpose of litigation." *Nye v. Ingersoll-Rand Co.*, 2009 WL 10741607, at *5 (D.N.J. Dec. 23, 2009) (citing *La. Mun. Police Empl. Ret. Sys. v. Sealed Air*, 253 F.R.D. 300, 306 (D.N.J. 2008)). Documents created in the ordinary course of business, even if useful in subsequent litigation, are not protected

by the work-product doctrine. *See Rockwell*, 897 F.2d at 1265–66. Ultimately, "[e]ven where the reasonable anticipation of litigation is established, whether the document comes within the purview of the work-product [doctrine] still depends primarily on the reason or purpose for the documents production." *In re Gabapentin*, 214 F.R.D. at 184.

Exceptions may apply to the protection afforded to work product. Fed. R. Civ. P. 26(b)(3)(A). Specifically, non-opinion work product materials may be discovered if "(i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(i)-(ii); *see also Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, 592 (3d Cir. 1984). A substantial need exists where the information would have a significant impact on the outcome of the case. *Mercury Indem. Co. v. Great Northern Ins. Co.*, 2022 WL 844561, at *9 (D.N.J. Mar. 22, 2022).

## III. DISCUSSION

The parties have submitted eleven sample documents from GPI's privilege log covering Group 1[7] and Group 2.[8] With the above legal principles in mind, the Court has evaluated the individual samples *in camera*.[9] As to each sample, the Court finds as follows.

---

[7] PL0000119; PL0000348; PL0000327; PL0000185; PL0000205; PL0000331; PL0000187.

[8] PL0000025; PL0000034; PL0000109; PL0000111.

[9] The Court notes that GPI's opening letter brief generally refers to the work-product doctrine. (*See* ECF No. 103 at 2, 8). As Plaintiffs, however, argue in their opposition, GPI's opening papers do not substantively apply the doctrine to any of the eleven samples or explain how any are in whole or in part protected by the work-product doctrine. (*See* ECF No. 105 at 7). On reply, GPI includes a paragraph of general argument that the work-product doctrine should apply in this case; however, again, no specific sample is mentioned. (*See* ECF No. 109 at 5). The Court concludes this is improper and insufficient to properly raise, let alone support, a claim of work-product protection. *See, e.g.*, *Spiniello*, 2008 WL 2775643, at *1 n.1 (citing *Torres v. Kuzniasz*, 936 F. Supp. 1201, 1212 n.5 (D.N.J.1996) (noting that "it is not up to the court to address the application of each of the other privileges ... upon the mere identification of a privilege by the defendants.")). Specifically, GPI bears the burden to show that the work-product doctrine applies to any given communication. *See In re Johnson & Johnson.*, 2021 WL 3144945, at *9 (D.N.J. July 26, 2021). And to meet that burden, GPI "must necessarily" proceed on "*a document-by-document basis, and not in the generalized way*" it proposes. *Shipyard,* 2015 WL 4623470, at *5 (emphasis added). By failing to argue the specifics of the work-

1. **Group 1 Samples**

- **PL0000119 & PL0000348**

The parties address these two samples together. (*See* ECF No. 103 at 9; ECF No. 105 at 8; ECF No. 109 at 6). PL0000119 is an email from Callaghan to nine people (two of whom are attorneys).[10] GPI describes the email as a communication requesting legal advice, that includes "senior leadership and other operational personnel" who were "responsible for coordinating and implementing GPI's response and legal advice during this rapidly involving period," (ECF No. 109 at 6), and who were included "only where there specific knowledge or responsibilities were necessary to provide information to counsel to act on counsel's advice." (Supplemental Callaghan Decl., ¶ 3). PL0000348 is the response from an attorney (Rizkalla) to PL0000119. The Court concludes that (i) GPI's redaction of PL0000119 is partially appropriate and partially not appropriate, and that (i) GPI's redaction of PL0000348 is appropriate.

As it relates to PL0000119, it appears that the email is a general update from Callaghan to senior leadership, and thus, it could be construed as business-related, particularly given the number of business personnel copied on the email. However, GPI has represented the business personnel were copied to facilitate legal advice, (Supplemental Callaghan Decl., ¶ 3), and the second paragraph—which is a single sentence beginning with the letter "W" and continuing to the end—

product doctrine as to the individual samples submitted, GPI has failed to establish that any such samples were prepared "in anticipation of litigation" or for the "primary purpose of litigation," *In re Gabapentin*, 214 F.R.D. at 184, and thus, that any samples are protected by the work-product doctrine. For that reason, the Court's analysis of the samples is limited to the attorney-client privilege.

[10] The recipients are Indrajit Bose (GPL President & Chief Quality Officer); Pandurang Polawar (GPL Vice President & Site Head of Quality); Om Shishoda (GPI Senior Director of Quality Assurance); Firas Abulaban (GPI Senior Vice President and Corporate Quality Head of North America); Dmitrey Kuznetsov (GPI Senior Vice President & Head of Commercial Operations); Jim Brown (GPI Senior Vice President of Sales and Marketing); Hany Rizkalla (in-house counsel); Caroline Sun (in-house counsel); and Marc Kikuchi (GPI President). (*See* Supplemental Callaghan Decl., ¶ 3). As many of the same individuals appear throughout the samples, the Court will refer to them by surnames throughout, intending no disrespect.

plainly reflects and reveals a need and request for legal advice. Nothing in the record or contained in the sample suggests the attorneys copied on the email (Rizkalla and Sun) were engaged in providing business advice, as opposed to legal advice. Thus, this portion of the sample is properly redacted. However, the remainder of PL0000119 is not privileged, as it does not reveal, disclose, discuss or otherwise identify any request for legal advice, provision of legal advice, nor identify the subject of legal advice sought.

"If the non-privileged portions of a communication are distinct and severable, and their disclosure would not effectively reveal the substance of the privileged legal portions, the court must designate which portions of the communication are protected and therefore may be excised or redacted (blocked out) prior to disclosure." *Anderson v. Trs. of Dartmouth College*, 2020 WL 5031910, at *2 (D.N.H. Aug. 25, 2020). Here, redaction of the second paragraph of PL0000119 is discrete, severable, and appropriately protected by the attorney-client privilege. The remainder of PL0000119 is not privileged and must be produced.

PL0000348 is comprised of PL0000119, as well as Rizkalla's response. For the reasons stated, only partial redaction of PL0000119 is proper. However, Rizkalla's response in PL0000348 is privileged, as it reveals his response to a request for legal advice.

- **PL0000327**

This sample is an email chain with two redactions: (i) an email from Bose to six business people, including GPI's general counsel, Laura Lester, on June 18, 2024, and (ii) an email from Sardesai in response. Neither redaction is appropriate, and thus, both withheld communications must be produced. Having closely reviewed the sample, there is no request for legal advice, implied or otherwise, present. Indeed, Bose's email suggests that she, without the advice of counsel, had made changes to a document referenced therein. Accordingly, nothing in the

redactions to PL0000327 reveal, reflect, or otherwise involve legal advice. Moreover, merely copying Lester on the email is insufficient to confer privilege. *See, e.g., Spiniello*, 2008 WL 2775643, at *2 (merely "cc'ing" an email to an attorney is insufficient to establish privilege). If this sample were deemed privileged, it would contradict the established rule: copying an attorney on a communication does not automatically render it privileged. *See id.*

- **PL0000185 & PL0000205**

The parties address these samples together. (*See* ECF No. 103 at 12-13; ECF No. 105 at 11; and ECF No. 109 at 7). The Court largely agrees with GPI that PL0000185 and PL0000205 are privileged. As it relates to PL0000185, the sample contains a draft letter provided by outside counsel, as well as dialogue relating to the letter, including Rizkalla's input and advice. Thus, PL0000185 is privileged. Likewise, PL0000205 is privileged (other than as detailed below), as the document contains the legal advice of GPI's outside counsel, Holland & Knight, as well as legal advice attributed to Rizkalla. Both attorneys referenced are acting in a legal capacity; there is no indication that the emails have a primary business purpose; and the substance of counsel's advice is set forth in the samples. As such, these samples are properly redacted except for a portion of the PL0000205 email chain, which appears to include emails between GPI and FDA. No such emails, even if further down in the chain of communications, are privileged as they do not reveal, reflect, or otherwise involve legal advice. Accordingly, such emails cannot be withheld as privileged.

- **PL0000331 & PL0000187**

The parties address these samples together. (*See* ECF No. 103 at 13-14; ECF No. 105 at 11; ECF No. 109 at 7). PL0000187 has been withheld, and PL0000331 has been redacted.

As it relates to PL0000187, the Court agrees that the email from Rizkalla on June 20, 2024, at 1:12 a.m. is privileged, as well as the email from Callaghan on June 20, 2024 at 5:25 a.m. PL0000187 contains the substance of an attorney's legal advice. However, the remainder of PL0000187 beyond those two emails is not privileged, as it contains general email correspondence, including correspondence with the FDA.

As it relates to PL0000331, the Court concludes it has been properly redacted. The email reflects Callaghan's request to a group of corporate officers as well as in-house and outside counsel regarding a response to FDA. The Court concludes that the redacted email contains an implied, if not express, request for legal advice, and therefore, is properly redacted.

**2. <u>Group 2 Samples</u>**

- **PL0000025**

This sample is comprised of a large email chain. GPI has redacted only a single email on the thread dated June 14, 2024, from Shishoda to Callaghan, copying several other corporate officers. The Court agrees that the redacted portion of the email qualifies as privileged, as the redacted portion identifies a subject area for which legal advice is perceived to be needed and sought. *See Margulis*, 2017 WL 772336, at *8.

- **PL0000034**

This sample is comprised of a lengthy email thread that is partially redacted. Only portions of GPI's redactions are appropriate.

As for the first redaction, the email from Glenn Saldanha to Callaghan, Kikuchi, and Bose sent June 18, 2024, at 4:31 p.m., is not privileged and should not be redacted. The email does not discuss, disclose or identify any privileged information. Nor has GPI established that this email was sent in any way to facilitate the provision of legal advice. The redaction is not appropriate.

As it relates to the second redaction, which is an email from Callaghan to Saldanha, Kikuchi, and Bose, sent June 18, 2024, at 9:32 p.m., the redaction is partially appropriate. The first paragraph of Callaghan's email, comprised of three sentences, is properly redacted, as it reflects the subject of legal advice being sought. The remainder of the email, however, relays factual, non-privileged information. Without revealing its contents, the remainder of Callaghan's email discusses information that is not privileged and has been discussed in the briefs filed on the public docket. Thus, all but the first paragraph of PL0000034 must be produced.

- **PL0000109**

This is a partially redacted email chain among several non-lawyers. The second sentence of the email from Callaghan to Saldanha, Kikuchi, and Bose dated June 18, 2024, at 10:23 p.m., is privileged and properly redacted, as it reflects the substance of ongoing legal review and advice. However, the remainder of the email chain, including the two other redacted emails in this sample, are not privileged, as they do not disclose, discuss, reference or otherwise imply the substance of legal advice. Without revealing the content, it appears to be general business information being shared between and among non-lawyers. Accordingly, the remainder of the email chain must be produced.

- **PL0000111**

This sample is privileged. The email reflects the substance of legal advice, conveys the substance of counsel's legal advice and seeks input to confirm information attendant to the provision of legal advice. As a result, this sample has been properly withheld.

## IV. CONCLUSION

For the reasons set forth above, GPI's request to withhold and/or redact documents is **GRANTED IN PART AND DENIED IN PART**. Specifically:

- GPI's redaction of PL0000119 is partially granted and partially denied.
- GPI's redaction of PL0000348 is partially granted and partially denied.
- GPI's redaction of PL0000327 is denied.
- GPI's withholding of PL0000185 is granted.
- GPI's withholding of PL0000205 is granted, as modified above.
- GPI's withholding of PL0000187 is partially granted and partially denied.
- GPI's redaction of PL0000331 is granted.
- GPI's redaction of PL0000025 is granted.
- GPI's redaction of PL0000034 is partially granted and partially denied.
- GPI's redaction of PL0000109 is partially granted and partially denied.
- GPI's withholding of PL0000111 is granted.

GPI is directed to produce the non-privileged sample documents identified above. In addition, GPI must apply the Court's decision to any other documents similarly withheld and/or redacted and produce any additional non-privileged documents accordingly. Consistent with this Opinion and Order, all non-privileged documents shall be produced on or before **September 30, 2026**.

The Court will conduct a Telephone Status Conference on **October 21, 2026, at 12:30 p.m.** The parties are instructed to dial 1-855-244-8681 and enter Access Code 23024029552# at the time of the Conference. On or before **October 7, 2026** the parties shall submit a joint status letter, including a proposed amended scheduling order for the remainder of this case.

Considering that certain portions of the motions were filed under seal and/or with redaction, *see* ECF Nos. 103, 105, 109, and a motion to seal portion of the briefing has been filed, *see* ECF No. 111, the Parties shall confer and jointly file any proposed redactions to this Opinion and Order by **October 1, 2026**.

The Clerk of the Court is requested to terminate ECF No. 103.

**SO ORDERED**.

**s/Jessica S. Allen**
**Hon. Jessica S. Allen**
**United States Magistrate Judge**

**Dated: September 9, 2026**